Docket No. 89156–Agenda 18–May 2000.

NEIL SALSITZ 
et al
., Appellants, v. FRITZ KREISS 
et al
., Appellees.

Opinion filed September 20, 2001.

JUSTICE FREEMAN delivered the opinion of the court:

At issue in this case is the arbitrability of certain disputes between plaintiffs, Neil Salsitz, Biagio D’Ugo, and New Horizon Productions, Ltd., and defendants, Fritz Kreiss and Alternative Utility Services of IL, Inc.

BACKGROUND

On March 9, 1994, Neil Salsitz and Biagio D’Ugo executed letters of understanding, dated November 17, 1993, whereby each agreed to invest $6,500 in Alternative Utility Services of IL, Inc. (AUS). Fritz Kreiss executed the letters of understanding as president of AUS. The letters of understanding do not contain an arbitration clause. Also on March 9, 1994, Salsitz and D’Ugo each executed a document denominated:

“Addendum 1, Letter of Understanding dated November 17, 1993

INCENTIVE STOCK OPTION PROGRAM.”

These documents contained an arbitration clause providing in part:

“In the event there are any claims or disputes between PARTIES hereto, such claims or disputes shall be submitted by the PARTIES for resolution and binding arbitration within Lake County, IL, in accordance with the rules of the American Arbitration Association as in effect under IL law.”

On June 17, 1994, Salsitz and D’Ugo requested the return of their investment and reimbursement of certain expenses they had incurred. On July 21, 1994, Kreiss returned Salsitz’s and D’Ugo’s original investment. However, Kreiss did not reimburse Salsitz’s and D’Ugo’s expenses. Salsitz and D’Ugo then filed suit in the municipal division of the circuit court (municipal court) for breach of contract and fraud, seeking $29,888.58 in unpaid expenses.

Kreiss and AUS moved to dismiss the municipal court action based upon the presence of the arbitration clauses in the stock option agreements. Salsitz and D’Ugo filed a response denying that they agreed to arbitrate the claims at issue, arguing that there was no agreement to arbitrate since the arbitration clauses were in the stock option agreements, not the letters of understanding. Salsitz and D’Ugo also argued that the contracts had been rescinded.

On February 15, 1995, the municipal court ordered the civil action stayed and directed that an arbitrator determine whether particular matters were arbitrable. Salsitz and D’Ugo did not pursue arbitration. However, Kreiss and AUS filed their own demand for arbitration on November 16, 1995. In their demand for arbitration, Kreiss and AUS sought an injunction preventing Salsitz, D’Ugo and New Horizon Productions, Ltd. (New Horizon), from unfairly competing with AUS, and sought monetary damages for violation of the Illinois Trade Secrets Act, for tortious interference with defendants’ existing contracts and with prospective business relations, for breach of contract, and for breach of fiduciary duty. On November 17, 1995, Salsitz and D’Ugo nonsuited the action in municipal court. At that point, all that remained before the court was Kreiss and AUS’s demand for arbitration.

Several arbitration hearings were held in 1996 and 1997. On August 8, 1997, Salsitz, D’Ugo and New Horizon filed a verified complaint in chancery court for declaratory and injunctive relief, seeking to stay and permanently enjoin the arbitration proceedings on the grounds that no agreement to arbitrate existed. Plaintiffs also sought a declaration that the arbitration clauses did not apply to any dispute under the letters of understanding, and, in particular, to the claims in the arbitration proceedings. In addition, on August 13, 1997, plaintiffs filed a motion for a stay of arbitration, and, on August 15, 1997, plaintiffs filed a motion for a temporary restraining order to enjoin the continuation of the arbitration hearings. On August 19, 1997, the chancery court denied plaintiffs’ motion for a temporary restraining order. As explained by the court at a later hearing:

“This case first came to this Court during the pendency of an arbitration hearing. At that time, on or about August 19, 1997, then Counsel for Plaintiffs Salsitz, D’Ugo and the New Horizon Productions asked this Court to stay an arbitration proceeding commencing between the parties. The issue addressed during the emergency motion was a determination as to the arbitrability of the issues. Although this Court did not enter a stay of the arbitration Proceedings at that time, the Court did leave it open for parties to address the issue at a later date.”

The arbitration continued. On September 23, 1997, plaintiffs filed an amended motion for a stay of arbitration, asserting that no agreement to arbitrate existed. On October 9, 1997, the chancery court denied plaintiffs’ amended motion for a stay. Thereafter, the arbitrator notified the parties that the final arbitration hearings would be held on December 10, 1997. Plaintiffs did not appear for those hearings. The arbitrator heard evidence from defendants regarding damages that they sustained. On December 11, 1997, the arbitrator declared the hearings closed, and issued a notice to plaintiffs on December 24, 1997. The notice informed plaintiffs that the arbitrator would issue an award within 30 days. Plaintiffs did not file a motion to reopen the hearings. On January 10, 1998, the arbitrator awarded defendants $3,761,174.40 in actual damages, and $2.5 million in punitive damages.

On January 21, 1998, defendants filed an application for confirmation of the arbitration award and for entry of judgment on the award. Plaintiffs opposed confirmation of the arbitration award; asked that the chancery court review the arbitrator’s determination of arbitrability; asked that the court vacate the arbitration award; and asked for leave to file an amended complaint, requesting that the court vacate the arbitration award. Subsequently, on June 12, 1998, Salsitz and New Horizon amended their complaint to add a count seeking to vacate the arbitration award. D’Ugo also amended his complaint to add a count seeking to vacate the arbitration award. In the amended verified complaints, plaintiffs alleged, 
inter alia
, that the arbitration award was obtained through undue means, citing misleading communications between the arbitrator and plaintiffs. Plaintiffs complained that the arbitrator should not have conducted the hearing on December 10, 1997, in plaintiffs’ absence, and should not have closed the hearings without giving plaintiffs an opportunity to present evidence. Plaintiffs alleged that they did not know the law firm, which had represented plaintiffs at the earlier hearings, had decided to cease representing plaintiffs and, consequently, did not appear on plaintiffs’ behalf at the hearing on December 10.

Thereafter, defendants filed a motion to dismiss plaintiffs’ amended verified complaints. At a hearing on January 27, 1999, the chancery court noted that the issue of arbitrability and defendants’ motion to dismiss plaintiffs’ amended complaints were intertwined. The court stated that it would first “address whether or not there could be arbitration of the agreement or agreements involved in the business relationship that was entered into by the parties.” The court believed, however, that it could not upset or invalidate the arbitrator’s ruling as to the arbitrability of the issues because the arbitrator’s ruling was entitled to deference. The court reasoned:

“[T]he Court finds that it cannot upset or invalidate the arbitrator’s rulings as to the arbitrability of the issues ***. The Court and the parties are both aware that–this is in parenthesis. Now I am quoting a case ‘Judicial review of arbitration award is restricted. Courts encourage settlement of disputes by arbitration; and accordingly, judicial review of an arbitration award is more limited than Appellate review of a Circuit Court’s decision. Courts must construe an arbitration award whenever possible to uphold their validity. Limited judicial review fosters the long accepted and encouraged principles that arbitration awards should be the end and not the beginning of litigation.’ ”

 The court dismissed plaintiffs’ amended verified complaints, affirmed the arbitrator’s award of actual damages, and vacated the award of punitive damages.

Within 30 days of this final ruling, plaintiffs appealed from the order dismissing their amended verified complaints. Defendants moved to dismiss the appeals as untimely under Supreme Court Rule 307(a)(1) (188 Ill. 2d R. 307(a)(1)). Defendants argued, 
inter alia
, that plaintiffs should have filed an interlocutory appeal from the denial of plaintiffs’ motion to stay the arbitration proceedings. Since plaintiffs failed to file an interlocutory appeal, they forfeited their right to contest the arbitrability of the letters of understanding. The appellate court granted the motion to dismiss as to the issue of arbitrability, but denied the motion as to the remaining issues. Having considered those issues on the merits, the appellate court affirmed the chancery court’s order. 311 Ill. App. 3d 590. We allowed plaintiffs’ petition for leave to appeal.

ANALYSIS

A. 
Res Judicata

Defendants maintain that, in its order of February 15, 1995, the municipal court determined the issue of arbitrability in defendants’ favor. Salsitz and D’Ugo did not appeal that order. Defendants note that the amended verified complaints plaintiffs subsequently filed in chancery court sought to stay and permanently enjoin the arbitration proceedings on the grounds that no agreement to arbitrate existed, and sought a declaration that the arbitration clauses were invalid or nonbinding. Defendants conclude the chancery court was correct in dismissing plaintiffs’ amended verified complaints because the doctrine of 
res judicata
 barred relitigation of the issue of arbitrability. We disagree.

In 
Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr
, 124 Ill. 2d 435 (1988), this court explained when it is appropriate for the circuit court to determine the issue of arbitrability in the first instance:

“Where the language of the arbitration agreement is clear, and it is apparent that the dispute sought to be arbitrated falls within the scope of the arbitration clause, the court should decide the arbitrability issue and compel arbitration. [Citations.] Similarly, if it is apparent that the issue sought to be arbitrated is not within the ambit of the arbitration clause, the court should decide the arbitrability issue in favor of the opposing party, because there is no agreement to arbitrate. [Citations.] ‘Thus, the arbitrability issue emerges as essentially one of giving effect to the parties’ expressed intention about the use of arbitration.’ [Citation.] The paramount factor in determining the parties’ intention is the scope of the arbitration clause in the contract.” 
Donaldson
, 124 Ill. 2d at 445.

This court noted, however, that a problem arises when the parties broadly agree to arbitrate and it is still unclear whether the subject matter of the dispute falls within the scope of the arbitration agreement. When the issue of contractual intention is reasonably debatable, should the determination of arbitrability be made by the court or by the arbitrator in the first instance? Having examined cases from other jurisdictions and reviewed the intent of the drafters of the Uniform Arbitration Act (see 710 ILCS 5/1 
et seq
. (West 1996)), this court held that:

“when the language of an arbitration clause is broad and it is unclear whether the subject matter of the dispute falls within the scope of arbitration agreement, the question of substantive arbitrability should initially be decided by the arbitrator.” 
Donaldson
, 124 Ill. 2d at 447-48.

See also 
Comdisco, Inc. v. Dun & Bradstreet Corp.
, 306 Ill. App. 3d 197, 203-04 (1999). However, the arbitrator’s decision is subject to an “ultimate determination of arbitrability by the court.” 
Donaldson
, 124 Ill. 2d at 451. A court may vacate an arbitration award if it determines there was no arbitration agreement. See 710 ILCS 5/12(a)(5) (West 1996).

In the present case, each stock option agreement contained a broad arbitration clause. Nonetheless, the parties disagreed as to the scope of the clause. Defendants argued that Salsitz’s and D’Ugo’s claims for breach of contract and fraud were subject to arbitration and moved to dismiss the complaint. Salsitz and D’Ugo argued their claims for breach of contract were based on an oral agreement between the parties terminating their relationship and providing for the return of Salsitz’s and D’Ugo’s investments in AUS and were not subject to arbitration pursuant to the arbitration clauses in the stock option agreements. Salsitz and D’Ugo also argued their claims for fraud, although related to the parties’ original agreement to invest in AUS, fell outside the scope of the agreement and were not subject to arbitration.

The municipal court did not decide the issue of arbitrability. Rather, the municipal court stayed Salsitz’s and D’Ugo’s action, and directed that an arbitrator determine whether their claims were arbitrable. Salsitz and D’Ugo did not pursue arbitration. Instead, on November 17, 1995, Salsitz and D’Ugo nonsuited the action in municipal court. Meanwhile, on November 16, 1995, defendants filed their demand for arbitration, seeking monetary damages for violation of the Illinois Trade Secrets Act, for tortious interference with defendants’ existing contracts and with prospective business relations, for breach of contract, and for breach of fiduciary duty. The arbitrator determined that defendants’ claims were arbitrable and entered the arbitration award from which plaintiffs seek relief. Under these circumstances, we reject defendants’ contentions that the municipal court determined the issue of arbitrability in their favor, and that plaintiffs’ amended verified complaints were an effort to relitigate that issue.

B. 
Interlocutory Appeal

Next, defendants renew their argument that in order to preserve the issue of arbitrability, plaintiffs had to file an interlocutory appeal from the chancery court’s order of August 19, 1997, denying plaintiffs’ motion to stay the arbitration proceedings. Since plaintiffs failed to file an interlocutory appeal, they forfeited their right to contest the arbitrability of disputes arising under the letters of understanding. We reject this argument for two reasons.

First, a party who decides not to file an appeal from an interlocutory order of the circuit court denying a stay of arbitration does not lose the opportunity to contest the arbitrability of the dispute in a subsequent appeal from a final judgment of the court confirming the arbitration award. Supreme Court Rule 307 regulates appeals from interlocutory orders of the circuit court. 188 Ill. 2d R. 307. The rule confers on parties the right to appeal certain interlocutory orders before entry of final judgment by the circuit court. An order of the circuit court to compel or stay arbitration is injunctive in nature and subject to interlocutory appeal under paragraph (a)(1) of the rule. 
Notaro v. Nor-Evan Corp.
, 98 Ill. 2d 268, 271 (1983). The rule, however, does not require that a party appeal from an interlocutory order of the circuit court denying a stay of arbitration. Under the rule, the party has the option of waiting until after final judgment has been entered to seek review of the circuit court’s interlocutory order. See 
Anderson v. Financial Matters, Inc.
, 285 Ill. App. 3d 123, 135 (1996); 
Alpine Bank v. Yancy
, 274 Ill. App. 3d 766, 768 (1995); 
Davis v. Bughdadi
, 120 Ill. App. 3d 236, 241 (1983).

The optional nature of Rule 307 is manifest from the language it employs. Rule 307 plainly states that an appeal “may” be taken to the appellate court from an interlocutory order of the circuit court. Use of the word “may” is generally regarded as indicating that action is permissive rather than mandatory. See 
People v. Reed
, 177 Ill. 2d 389, 393 (1997). There is no basis for construing the term differently here.

In the present case, plaintiffs could have filed an appeal from the interlocutory order of the chancery court, denying their motion for a stay of arbitration. They did not do so. However, it was not mandatory that they appeal from the interlocutory order. Plaintiffs could await the final judgment of the chancery court to seek review of the interlocutory order. Thus, plaintiffs’ failure to file an appeal from the interlocutory order did not result in a forfeiture of their right to contest the arbitrability of disputes arising under the letters of understanding.

Second, in its order of August 19, 1997, the chancery court did not determine the issue of arbitrability. Rather, the chancery court denied plaintiffs’ motion for a temporary restraining order and deferred its ruling on the issue of arbitrability. As noted above, a court may determine that an arbitrator should decide the issue of arbitrability in the first instance. However, the arbitrator’s decision is subject to an “ultimate determination of arbitrability by the court.” 
Donaldson
, 124 Ill. 2d at 451.

As late as January 1999, the chancery court believed that the issue of arbitrability was subject to review. Indeed, the chancery court ruled on the issue, and, because the court believed that the arbitrator’s ruling on arbitrability was subject to deference, the court determined not to upset that ruling. In light of the fact that the chancery court did not rule on the issue of arbitrability until January 1999, it would seem anomalous to rule that plaintiffs were required to file an appeal on September 19, 1997, the cutoff date for an interlocutory appeal from the August 19 order, and, having failed to file such an appeal, plaintiffs forfeited their right to contest the arbitrability of claims arising under the letters of understanding. We refuse to so hold.

C. 
Arbitration Agreement

The Illinois Uniform Arbitration Act embodies a legislative policy favoring enforcement of agreements to arbitrate future disputes. 
Donaldson
, 124 Ill. 2d at 443; 
Flood v. Country Mutual Insurance Co.
, 41 Ill. 2d 91, 93 (1968). Accordingly, the Act empowers the circuit court, upon application of a party to a dispute, to compel or stay arbitration, or to stay court action pending arbitration.
 United Cable Television Corp. v. Northwest Illinois Cable Corp.
, 128 Ill. 2d 301, 306 (1989); 
Donaldson
, 124 Ill. 2d at 443.

The courts of this state favor arbitration as well. Arbitration is regarded as an effective, expeditious, and cost-efficient method of dispute resolution. 
United Cable
, 128 Ill. 2d at 306; 
Johnson v. Baumgardt
, 216 Ill. App. 3d 550, 555-56 (1991). Thus, wherever possible, the courts construe arbitration awards so as to uphold their validity. 
Rauh v. Rockford Products Corp.
, 143 Ill. 2d 377, 386 (1991); 
Christian Dior, Inc. v. Hart Schaffner & Marx
, 265 Ill. App. 3d 427, 431 (1994).

While arbitration is a favored method of dispute resolution, this court has consistently cautioned that an agreement to arbitrate is a matter of contract. 
United Cable
, 128 Ill. 2d at 306; 
Flood
, 41 Ill. 2d at 93. The parties to an agreement are bound to arbitrate only those issues they have agreed to arbitrate, as shown by the clear language of the agreement and their intentions expressed in that language. 
Rauh
, 143 Ill. 2d at 387; 
Flood
, 41 Ill. 2d at 94. An arbitration agreement will not be extended by construction or implication. 
Flood
, 41 Ill. 2d at 94.

It follows that, where the arbitrator decides the question of arbitrability in the first instance, the circuit court must review the arbitrator’s decision 
de novo
. 
Donaldson
, 124 Ill. 2d at 451; 
Amgen, Inc. v. Ortho Pharmaceutical Corp.
, 303 Ill. App. 3d 370, 378 (1999). See also 
Woonsocket Teachers’ Guild, Local 951 v. Woonsocket School Committee
, 770 A.2d 834, 837 (R.I. 2001); 
DMS Properties-First, Inc. v. P.W. Scott Associates, Inc.
, 748 A.2d 389, 392 (Del. 2000) (and cases cited therein); 
Ex parte Stamey v. Easter
, 776 So. 2d 85, 88 (Ala. 2000); 
In re Arbitration Between: Independent School District No. 88, New Ulm, Minnesota v. School Service Employees Union Local 284
, 503 N.W.2d 104, 105 (Minn. 1993); 
Grad v. Wetherholt Galleries
, 660 A.2d 903, 908 (D.C. App. 1995); 
Oil, Chemical & Atomic Workers International Union v. Lone Star Producing Co.
, 332 S.W.2d 151, 154 (Tex. Civ. App. 1959). Were it not so, a party would be bound by the arbitration of disputes he has not agreed to arbitrate and would be left with only a court’s deferential review of the arbitrator’s decision on the question of arbitrability. 
First Options of Chicago, Inc. v. Kaplan
, 514 U.S. 938, 942, 131 L. Ed. 2d 985, 992, 115 S. Ct. 1920, 1923 (1995). We agree with the court’s observation in 
Grad
:

“To require any degree of judicial deference to an arbitrator’s decision regarding arbitrability where a proper objection to the arbitrator’s authority has been lodged would vitiate the consent basis of statutory arbitration by permitting an arbitrator to clothe herself with actual authority, based on the agreement of the one party asserting the claim. *** [A]ny judicial determination of arbitrability is necessarily 
de novo
.” 
Grad
, 660 A.2d at 908.

There are, of course, instances where the parties agree to submit the question of arbitrability itself to arbitration. In those instances, the circuit court should review the question of arbitrability deferentially, that is, the court’s standard for reviewing the arbitrator’s decision on arbitrability should be the same standard courts apply when they review any other matter that the parties have agreed to arbitrate. 
First Options
, 514 U.S. at 943, 131 L. Ed. 2d at 993, 115 S. Ct. at 1923; 
AT&T Technologies, Inc. v. Communications Workers of America
, 475 U.S. 643, 649, 89 L. Ed. 2d 648, 656, 106 S. Ct. 1415, 1418 (1986). But, as the Court cautioned in 
First Options
:

“Courts should not assume that the parties agreed to arbitrate arbitrability unless there is ‘clea[r] and unmistakabl[e]’ evidence that they did so. [Citations.] In this manner the law treats silence or ambiguity about the question ‘
who
 (primarily) should decide arbitrability’ differently from the way it treats silence or ambiguity about the question ‘
whether
 a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement’–for in respect to this latter question the law reverses the presumption. [Citations.]

*** [G]iven the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration, one can understand why courts might hesitate to interpret silence or ambiguity on the ‘who should decide arbitrability’ point as giving the arbitrators that power, for doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide.” (Emphases in original.) 
First Options
, 514 U.S. at 944-45, 131 L. Ed. 2d at 994, 115 S. Ct. at 1924-25.

In the present case, nothing in the stock option agreements indicates that the parties intended to submit the question of arbitrability to arbitration. It follows that the chancery court should have reviewed the question of arbitrability 
de novo
. Further, since the question of arbitrability is one of contract law, it also follows that our review of the chancery court’s order confirming the arbitration award and dismissing the amended verified complaints is 
de novo
. 
First Options
, 514 U.S. at 948, 131 L. Ed. 2d at 996, 115 S. Ct. at 1926.

The stock option agreements provided that defendants would issue a stock option incentive bonus, consisting of an option to purchase 35 shares of common stock, to the individual participant for every kilowatt of wholesale electric contracted for and sold by the participant, or for every kilowatt of wholesale electric projects for which the participant provided or secured nonrecourse funding. Each stock option agreement contained an arbitration clause binding the individual participant and defendants to arbitrate disputes arising under the stock option agreement. The stock option agreements, however, were separate agreements from the letters of understanding. And while each stock option agreement contained an arbitration clause, the letters of understanding did not.

 In their demand for arbitration, defendants sought an injunction preventing plaintiffs from unfairly competing with AUS, and sought monetary damages for violation of the Illinois Trade Secrets Act, for tortious interference with defendants’ existing contracts and with prospective business relations, for breach of contract, and for breach of fiduciary duty. Thus, the disputes between the parties, as framed by the demand for arbitration, arose from the letters of understanding, that is to say, from plaintiffs’ agreement to invest in AUS; plaintiffs’ participation in AUS management; plaintiffs’ termination of their relationship with AUS; and various actions detrimental to AUS that plaintiffs took once the relationship ended. The disputes between the parties did not arise from the stock option incentive bonus defendants committed to give plaintiffs based upon plaintiffs’ performance with AUS. As such, the disputes between the parties did not fall within the scope of the arbitration clauses and were not subject to arbitration.

The chancery court erred in confirming the award of the arbitrator and dismissing plaintiffs’ amended verified complaints.

D. 
Waiver

Citing 
Tri-City Jewish Center v. Blass Riddick Chilcote
, 159 Ill. App. 3d 436 (1987), defendants maintain that plaintiffs waived any objections to arbitrability by participating in the arbitration hearings. We disagree.

In 
Tri-City
, the defendant made a demand for arbitration in December of 1983, and the arbitration hearings were held in November of 1985. By letter dated April 24, 1984, the plaintiff advised the American Arbitration Association that the dispute might not be arbitrable and it might seek a court-ordered stay of the proceedings. However, the plaintiff did not challenge the jurisdiction of the arbitration panel prior to the hearings. In February of 1986, the arbitrators rendered an award granting $65,000 to the defendant in payment of its fees and $40,000 to the plaintiff for damages. The plaintiff subsequently filed suit seeking to vacate the arbitration award. The circuit court found that the plaintiff had waived its objections to the arbitration by participating in the proceedings, and dismissed the complaint.

The appellate court affirmed the dismissal of the complaint. The court noted that any issue regarding the arbitrability of a dispute is waived by participation in the arbitration proceedings. Although the plaintiff had notified the American Arbitration Association that it might seek a court-ordered stay of the proceedings, the plaintiff had not done so. The court deemed the issue of arbitrability waived inasmuch as it was raised by the plaintiff subsequent to the rendition of the arbitration award. 
Tri-City
, 159 Ill. App. 3d at 439.

Tri-City
 is inapposite. In the present case, plaintiffs objected to the arbitration proceedings in a timely manner. At the introductory hearing with the arbitrator, Salsitz and D’Ugo objected that no agreement to arbitrate existed. Thereafter, on August 8, 1997, plaintiffs filed a verified complaint in chancery court for declaratory and injunctive relief, seeking to stay and permanently enjoin the arbitration proceedings on the grounds that no agreement to arbitrate existed. Plaintiffs also sought a declaration that the arbitration clauses did not apply to any dispute under the letters of understanding and, in particular, to the claims in the arbitration proceedings. In addition, on August 13, 1997, plaintiffs filed a motion for a stay of arbitration, and, on August 15, 1997, plaintiffs filed a motion for a temporary restraining order to enjoin the continuation of the arbitration hearings. The arbitrator rendered the award on January 18, 1998. A timely objection preserves the right to challenge an award, even where the parties participate in the arbitration proceedings. 
Ure v. Wangler Construction Co.
, 232 Ill. App. 3d 492, 499 (1992); 
Bisluk v. Town Realty, Inc.
, 90 Ill. App. 3d 1039 (1980); 710 ILCS 5/12(a)(5) (West 1996).

We hold that plaintiffs did not waive their objections to the arbitrability of the disputes.

CONCLUSION

We conclude that plaintiffs did not agree to arbitrate the disputes defendants submitted for arbitration. The chancery court should have vacated the arbitration award entered in defendants’ favor. In light of this holding, we need not address the other issues raised on appeal.

We reverse the judgments of the appellate court and circuit court, and we vacate the arbitration award.

Appellate court judgment reversed;

circuit court judgment reversed;

award vacated.

Supplemental Opinion Upon Denial of Rehearing

Upon denial of defendants’ petition for rehearing, we find it appropriate to comment briefly upon one of the arguments raised by defendants in the petition.

This court filed an opinion in this matter on December 1, 2000. In that opinion, we noted that plaintiffs had failed to file an interlocutory appeal from the chancery court’s order denying their motion to stay arbitration. We held, 
inter alia
, that plaintiffs could no longer contend that their dispute with defendants was not subject to arbitration. On December 22, 2000, plaintiffs filed a petition for rehearing in which they maintained that the language of Supreme Court Rule 307(a)(1) is permissive and, consequently, this court was mistaken in requiring plaintiffs to have filed an interlocutory appeal from the chancery court’s order denying their motion for a stay of arbitration. We granted plaintiffs’ petition for rehearing and ordered additional briefing on the matter to consider the propriety of our construction of Rule 307.

In their petition for rehearing, defendants maintain that, in reversing the holding of our December 1, 2000, opinion, this court has violated the principle of 
stare decisis
. We disagree.

In our view, defendants’ argument overlooks the role of rehearing in appellate practice and its effect on the application of 
stare decisis
. As observed by the special concurrence in 
Berg v. Allied Security, Inc.
, 193 Ill. 2d 186, 191-92 (2000) (Freeman, J., specially concurring):

“Once this court issues an opinion, our rules of appellate procedure provide the nonprevailing party with the opportunity for rehearing in order to apprise the court of points the party believes were ‘overlooked or misapprehended.’ 134 Ill. 2d R. 367(b). ‘The right to apply for a rehearing is not given by the statute, but is a matter of grace or favor, growing largely out of the willingness of the court to correct any inadvertent error.’ 
Vickers v. Tyndall
, 168 Ill. 616, 617 (1897). This rule exists so that the court can correct errors ‘into which the court may have inadvertently fallen in deciding the case as originally presented.’ 
Matthews v. Granger
, 196 Ill. 164, 170 (1902). This court has previously noted that the filing of a petition for rehearing does not alter the effective date of the judgment unless the court allows the petition, in which case the effective date of judgment is the date that judgment is entered on rehearing. See 
PSL Realty Co. v. Granite Investment Co.
, 86 Ill. 2d 291 (1981); 
Glasser v. Essaness Theatres Corp.
, 346 Ill. App. 72 (1952) (noting that when a petition for rehearing is filed, the judgment of the reviewing court does not become final until the petition is denied).”

In the present case, once plaintiffs filed their petition for rehearing and this court determined that the petition should be allowed, the original December 1, 2000, decision could not be considered a final opinion. Given the importance of 
stare decisis
, we believe that it was better to reconsider the matters raised by plaintiffs on the petition for rehearing before our opinion became final, rather than using a later case to limit or overrule our decision, particularly since this case concerned the application of one of the rules of this court. Granting plaintiffs’ petition for rehearing was not an affront to the principle of 
stare decisis
.

Defendants have not cited any opinions in support of the proposition that the principle of 
stare decisis
 applies to decisions which are not yet final. We note that defendants’ argument ignores this court’s admonishment that opinions which are not yet final may not be cited as legal precedent. Further, we note that applying the principle of 
stare decisis
 to opinions which are not yet final means that a court could never grant a petition for rehearing, correct errors in the opinion, and perhaps reconsider the disposition of the case. Defendants’ argument is untenable.