Tamara R. **CHANDLER**, Individually and on Behalf of All Others Similarly Situated, Plaintiff,

v.

**AT&T WIRELESS SERVICES, INC.**, Defendant.

No. CIV. 04–180–GPM.

United States District Court, S.D. Illinois.

Feb. 16, 2005.

Bradley M. Lakin, L. Thomas Lakin, Richard J. Burke, Jr., Thomas G. Maag, Timothy O. O'Sullivan, Lakin Law Firm PC, Wood River, IL, Malik R. Diab, Phillip A. Bock, Diab & Bock, Paul M. Weiss, Tod A. Lewis, Freed & Weiss, LLC, Chicago, IL, Gordon E. Maag, Law Offices of Gordon E. Maag, Glen Carbon, IL, for Plaintiff.

Jennifer S. Kingston, Louis F. Bonacorsi, Bryan Cave LLP, St. Louis, MO, for Defendant.

### *MEMORANDUM AND ORDER*

MURPHY, Chief Judge.

Before the Court is Defendant AT & T Wireless Services, Inc.'s ("AWS") Motion to Compel Arbitration and Stay Proceedings (Doc. 9) filed July 21, 2004. Defendant moves the Court to compel arbitration of all claims in this matter.

Plaintiff Tamara Chandler ("Chandler") challenges cellular phone service agreements entered into with Defendant AWS. As part of its term plans (contracts entered into for a specified period of time) with customers, AWS charges an "Early Cancellation Fee" ("ECF") when a customer decides to terminate service at any time before the end of the term of the agreement. Chandler asserts that the amount of the charge is the same regardless of when the customer terminates the service, as long as such service is cancelled before the term of the agreement expires. Chandler challenges AWS's utilization of the ECF as a valid liquidated damages provision.

#### BACKGROUND

In September 2001, Chandler entered into a contract to use AWS's cellular service. Plaintiff's Complaint, ¶ 20. Chandler signed up for a new one-year term in April 2003. *Id.* In October 2003, Chandler requested that AWS cancel her service. *Id.* AWS told her that she must pay an ECF of $175.00 in order to cancel her service. *Id.* Chandler refused to pay the ECF, and AWS refused to cancel her contract. *Id.*

At the time Chandler activated service with AWS, the packages of all new cellular phones sold by AWS included a copy of the AT & T Wireless Welcome Guide. Affidavit of Donald Van Hise, ¶ 3. The Guide provides instructions for using the phone and other information such as security options, return policy, and terms and conditions. Guide, p. 3. Chandler, in her complaint, does not allege that she did not receive a copy of the Guide or that she was unaware of the terms.

#### ANALYSIS

The Federal Arbitration Act ("FAA") was originally enacted "... to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 111 S.Ct. 1647, 1651, 114 L.Ed.2d 26 (1991) (citations omitted). "Its primary substantive provision states that '[a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Gilmer*, 500 U.S. at 24–25, 111 S.Ct. at 1651 (*quoting* 9 U.S.C. § 2). Section 3 of the FAA provides for stays of proceedings where the issue therein is referable to arbitration, and § 4 provides for the court's entering an order compelling arbitration where a party has failed to arbitrate under the agreement. 9 U.S.C. §§ 3, 4.

"The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). While it is well-established that FAA policy favors the enforcement of valid arbitration agreements, Chandler cannot be compelled to arbitrate unless she has entered into a valid contract waiving her right to a judicial forum.

Chandler did not contact AWS to cancel her services but instead used the phone and entered into an additional one-year term. Notwithstanding the agreement's prohibition of class actions and its arbitration clause, Chandler filed the instant putative class action against AWS, alleging that the ECF was an unenforceable penalty and that the arbitration clause was part of AWS's fraudulent scheme. In her complaint, Chandler presents four counts: Count I alleges a violation of the Illinois Consumer Fraud Act and similar consumer protection statutes of the other States where AWS does business; Count II alleges unjust enrichment; Count III seeks relief from unlawful penalties; and Count IV seeks a declaratory judgment that AWS cannot assess a flat $175.00 ECF, that Chandler and other class members are entitled to cancel their contracts with AWS without paying a $175.00 ECF, and that Chandler and members of the class are entitled to a full refund of any illegal penalties collected by AWS.

AWS submits the affidavit of Donald Van Hise, who is the AWS district sales manager who oversees the daily operations of AWS retail stores in the area where Chandler [1] purchased two Nokia phones in September 2001. Van Hise's affidavit authenticates the manner in which the Guides were distributed, specifically, that the packages of all phones sold by AWS included a copy of the Guide and that the packaging referenced the Terms and Conditions for wireless service included in the Guide. Van Hise declares that if Chandler received the phones, she also received the Guide. His affidavit also states that Chandler agreed on various occasions to extend the term of her service agreement for additional one-year terms, including in April 2003, and that she remained, as of April 14, 2004, an AWS customer.

### 1. Whether the Agreement is a Valid Contract

Chandler agrees that she entered into a contract, but she asserts that AWS breached the terms of the agreement with its customers by charging an illegal and unenforceable penalty over and above the amounts customers actually owe. Plaintiff's Complaint, ¶¶ 6, 7. Chandler also maintains that AWS "surreptitiously" inserted the arbitration clause into its contract to prevent Chandler and the class from vindicating their statutory and common law causes of action. *Id.* at ¶ 27.

The relevant clauses in the agreement are prefaced or set forth in bold and capitalized text. Under "Terms and Conditions," the Guide provides as follows:

PLEASE READ THESE TERMS AND CONDITIONS CAREFULLY. They govern the relationship between you and AT & T Wireless and explain our respective legal rights concerning all aspects of our relationship. . . .

---

**1.** For the sake of simplicity, the Court will refer to the purchaser of the phones as "Chandler," with the understanding that she was Ms. Kielholtz at the time that she made her original purchase and, subsequently, Ms. Bopp.

IF YOU 1) USE THE SERVICE OR THE WIRELESS DEVICE, OR 2) IF YOU ACCEPT A BENEFIT IN EXCHANGE FOR COMMITTING TO NEW TERMS AND CONDITIONS, OR 3) IF YOU PAY U.S. ANY AMOUNT FOR THIS SERVICE, THESE TERMS AND CONDITIONS WILL GOVERN OUR RELATIONSHIP. IF YOU DO NOT AGREE WITH THESE TERMS AND CONDITIONS, DO NOT USE THE SERVICE OR DEVICE AND NOTIFY U.S. IMMEDIATELY TO CANCEL SERVICE. Guide, p. 21.

\* \* \* \* \* \*

IF YOU SELECT A RATE PLAN, FEATURE OR PROMOTION WITH A FIXED TERM, YOU MAY TERMINATE THIS AGREEMENT WITH RESPECT TO ANY NUMBER WITHIN 30 DAYS AFTER YOUR ACTIVATION DATE OF THAT NUMBER. IF YOU TERMINATE SERVICE MORE THAN 30 DAYS AFTER YOUR ACTIVATION DATE, BUT BEFORE THE END OF YOUR FIXED TERM, OR WE TERMINATE FOLLOWING YOUR DEFAULT, YOU WILL BE IN MATERIAL BREACH OF THIS AGREEMENT. YOU AGREE OUR DAMAGES WILL BE DIFFICULT OR IMPOSSIBLE TO DETERMINE AND AGREE TO PAY US, AS A REASONABLE ESTIMATE OF OUR DAMAGES AND IN ADDITION TO ALL OTHER AMOUNTS OWING, A CANCELLATION FEE FOR EACH NUMBER (THE ACTUAL AMOUNT OF WHICH IS REFLECTED IN THE RATE PLAN OR FEATURE OR PROMOTIONAL MATERIALS).... Guide, p. 22.

By using her phone rather than canceling immediately, or no later than thirty days after her activation date, Chandler accepted the offered services and the terms and conditions under which they were offered. She had a clear mechanism and reasonable opportunity to reject them.

The Seventh Circuit, in *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147 (7th Cir.1997), considered a fact situation very similar to the case at bar. In *Hill*, a computer purchaser asserted claims against the manufacturer; the manufacturer sought enforcement of an arbitration clause which had been included in terms sent to the buyer in the box in which the computer was shipped. *Hill*, 105 F.3d at 1148. The Court stated, "Terms inside Gateway's box stand or fall together. If they constitute the parties' contract because the Hills had an opportunity to return the computer after reading them, then all must be enforced." *Id.* The Court approved the simple "accept or return" device, noting that "[P]ractical considerations support allowing vendors to enclose the full legal terms with their products." *Id.* at 1149.

■ Similarly, in the case at bar, the arbitration clause and the information regarding the ECF were included in the Guide which Chandler received in the package with the phone. She had the option to accept or return the phone. In accepting the phone and using the service, Chandler indicated her willingness to contract on the terms offered by AWS. As consideration for the contract, Chandler received something of legal value—continued cellular service—in exchange for her promise to accept the terms of the contract, including the ECF and the arbitration clause. *See Boomer v. AT&T Corp.*, 309 F.3d 404, 416 (7th Cir.2002).

■ Chandler complains that AWS authors the written forms and that customers are not allowed to individually negotiate the terms of their cellular service. Plaintiff's Complaint, ¶ 17. In other words, there was no bargained-for-exchange between the parties. However, the lack of a bargained-for-exchange "does not

prohibit the execution of form contracts presented on a take-it-or-leave it basis." *Boomer,* 309 F.3d at 416 (*citing Metro East Center for Conditioning and Health v. Qwest Communications Intern., Inc.,* 294 F.3d 924, 926 (7th Cir.2002) ("Yet we have held that form contracts, offered on a take-it-or-leave-it basis, are agreements for purposes of the Arbitration Act.")). Here, even though Chandler could not negotiate the terms of the contract, she was free to make other choices, such as choosing a cellular service other than AWS.

Accordingly, the Court concludes that the agreement set forth in the Welcome Guide constituted a contract and, as such, established the terms and conditions governing AWS's relationship with Chandler. This includes the arbitration clause, since, as the Seventh Circuit so aptly put it, the terms stand or fall together. *Hill,* 105 F.3d at 1148. The question remains whether the arbitration clause should not be enforced because it is unconscionable and violates the Illinois Consumer Fraud Act.

## II. Preemption of State Law Claims

Under the heading, "RESOLUTION OF DISPUTES," the agreement provides for arbitration, as follows:

> PLEASE READ THIS SECTION CAREFULLY. IT AFFECTS RIGHTS THAT YOU MAY OTHERWISE HAVE. IT PROVIDES FOR RESOLUTION OF MOST DISPUTES THROUGH ARBITRATION INSTEAD OF COURT TRIALS AND CLASS ACTIONS. ARBITRATION IS FINAL AND BINDING AND SUBJECT TO ONLY VERY LIMITED REVIEW BY A COURT. THIS ARBITRATION CLAUSE SHALL SURVIVE TERMINATION OF THIS AGREEMENT.
>
> **a. Binding Arbitration.** This provision is intended to be interpreted broadly to encompass all disputes or claims arising out of our relationship. Any dispute or claim made by you against us ... arising out of· or relating to this Agreement or the Service or any equipment used in connection with the Service (whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory) will be resolved by binding arbitration except that (1) you may take claims to small claims court if they qualify for hearing by such a court or (2) you or we may choose to pursue claims in court if the claims relate solely to the collection of any debts you owe us. However, even for those claims that may be taken to court, you and we both waive any claims for punitive damages and any right to pursue claims on a class or representative basis. Guide, p. 24.

This section further provides that arbitration shall be conducted in accordance with the American Arbitration Association and interpreted and enforced in accordance with the FAA. Guide, p. 25.

The FAA preempts any state law that purports to restrict the enforceability of arbitration agreements. As the Supreme Court stated in *Southland Corp. v. Keating,* 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984), "Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements." *Keating* at 16, 104 S.Ct. at 861 (footnote omitted). "We see nothing in the Act indicating that the broad principle of enforceability is subject to any additional limitations under state law." *Id.* at 11, 104 S.Ct. at 858.

In her complaint, Chandler asserts that arbitration is prohibitively expensive and that customers would forgo their claim because the cost of arbitration would always be greater than the amount of the dispute. Plaintiff's Complaint, ¶ 27. Here, the argument is that the arbitration

clause is unconscionable rather than that arbitration is an ineffective forum to vindicate Chandler's statutory rights. Chandler bears the burden of proving that arbitration will be prohibitively expensive. *See Northwestern Nat. Ins. Co. v. Donovan,* 916 F.2d 372 (7th Cir.1990).

■ Based on the nature of the allegations in this case, it appears to the Court that Chandler's claims may very well be worth less than $1,000. The arbitration clause provides that for claims of less than $1,000, Chandler is only obligated to pay $25.00, and AWS will pay all other administrative costs and fees. Guide, p. 25. If Chandler elects to hire counsel or if she has other costs related to presenting evidence at the arbitration, she must bear those expenses. *Id.* Thus, an effective forum is available for Chandler to vindicate her statutory rights.

Additionally, far from placing the relevant clauses "surreptitiously," as Chandler claims, AWS purposefully caused them to stand out from surrounding text. The "Resolution of Disputes" clause is capitalized and urges the consumer to read the information carefully since it may impact the consumer's rights. Given the sweeping language of the agreement, including any dispute "... arising out of or relating to this Agreement ...," Chandler's claims relating to the ECF charged for cancellation of AWS's service fall within the arbitration provision. The process is straightforward; the language has a plain meaning; and there is no evidence of fraud.

Moreover, even though the FAA preemption bars Chandler from challenging the validity of the arbitration clause under state law, the result would not differ under Illinois law, which is largely coextensive with the FAA[2]. As the Illinois Supreme Court stated in *Salsitz v. Kreiss,* 198 Ill.2d 1, 260 Ill.Dec. 541, 761 N.E.2d 724 (Ill. 2001), "The Illinois Uniform Arbitration Act embodies a legislative policy favoring enforcement of agreements to arbitrate future disputes". *Salsitz* at 13, 260 Ill.Dec. 541, 761 N.E.2d at 730–31 (citations omitted). The Court continued, "Arbitration is regarded as an effective, expeditious, and cost-efficient method of dispute resolution." *Id.* (citations omitted).

Thus, the Court finds that Chandler cannot prevail under either theory: her state law challenges to the validity of the arbitration clause are preempted under the FAA and, equally, in the alternative, her challenges would fail under Illinois law. Chandler is bound by the arbitration clause, and her claims must be submitted to arbitration.

The agreement sets forth where the arbitration shall be held and how costs are to be apportioned. *See* Guide, p. 25. It further provides that arbitration shall be conducted in accordance with the American Arbitration Association ("AAA"). *Id.* The AAA will provide a list of mediators who have expertise in dispute resolution.

### CONCLUSION

For the foregoing reasons, Defendant AT & T Wireless Services, Inc.'s Motion to Compel Arbitration and Stay Proceedings (Doc. 9) is **GRANTED.** This case is referred to arbitration, and all proceedings herein are **STAYED** pending the outcome of such arbitration.

**IT IS SO ORDERED.**

---

2. "Validity of arbitration agreement. A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable save upon such grounds as exist for the revocation of any contract...." 710 ILCS § 5/1.