NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 221018-U

NO. 4-22-1018

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 16, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| POLICEMEN'S BENEVOLENT LABOR COMMITTEE (PBLC), A Labor Organization, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) | Tazewell County |
| v. | ) | No. 18MR44 |
| THE CITY OF PEKIN, ILLINOIS, a Municipal | ) | |
| Corporation, and JOHN DOSSEY, in His Official | ) | |
| Capacity as Chief of the Pekin Police Department, | ) | |
| Defendants-Appellants, | ) | |
| and | ) | Honorable |
| THE PEKIN POLICE AND FIRE COMMISSION, | ) | Paul E. Bauer, |
| Defendant. | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices Turner and Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Defendants' appeal is dismissed for lack of appellate jurisdiction.

¶ 2    Defendants—the City of Pekin, Illinois, (City) and John Dossey, chief of the Pekin Police Department—appeal the trial court's order denying a request to vacate an arbitration award on public policy grounds and requiring them to proceed to arbitration for "a *de novo* hearing" regarding whether just cause existed for terminating the employment of Greg Simmons, a City police officer. We dismiss this appeal based upon a lack of appellate jurisdiction.

¶ 3                                    I. BACKGROUND

¶ 4    From May 1, 2015, to April 30, 2019, the City and plaintiff—the Policemen's Benevolent Labor Committee (Union)—were parties to a collective bargaining agreement (CBA),

which named the Union the sole bargaining representative of the City's police officers, including Simmons. Article 12 of the CBA contained a four-step grievance procedure aimed at resolving "any dispute or difference of opinion raised by an [e]mployee or the Union against the [City] involving the meaning, interpretation, or application of the provisions of the [CBA]." The fourth step provided for referrals "to arbitration" for unsettled grievances.

¶ 5    Article 13 of the CBA concerned the procedures for the discipline or discharge of police officers. The parties agreed that disciplinary action would be imposed "only for just cause." The CBA further provided as follows:

> "Section 13.6 Discipline and Discharge
>
> All disciplinary matters shall remain under the jurisdiction of the Chief of Police subject to the laws of the State of Illinois and the rules and regulations of the Board of Police and Fire Commissioners [(Board)], except as otherwise expressly provided for herein.
>
> Section 13.7 Appeal and Discipline
>
> The officer may elect to appeal a decision by the [Board] either through the Courts or Arbitration, but not both."

¶ 6    In August 2017, Dossey filed a complaint with the Board, alleging Simmons had engaged in misconduct by making inappropriate remarks about another officer's anatomy, defying directions not to discuss the investigation into the remarks with any other officer, and lying during his formal interrogation. Dossey asked the Board to conduct a hearing to determine whether cause for discipline against Simmons existed, find that Simmons's conduct constituted "cause for discipline up to and including termination," and order that Simmons be disciplined or discharged from his employment. In February 2018, Dossey filed an amended complaint with the Board,

adding a claim that Simmons engaged in misconduct by surreptitiously recording the statements and conversations of other members of the police department.

¶ 7　　　　Simmons filed grievances following each of Dossey's complaints, asserting Dossey's allegations could not be proven and that "just cause" for his discharge was lacking. Dossey responded to Simmons's initial grievance by acknowledging that he was seeking to have Simmons discharged from the Pekin Police Department and asserting that the matter was not subject to the CBA's grievance procedure. He also maintained that there was sufficient "just cause" under the circumstances to justify discipline. Following Dossey's response, Simmons's attorney informed defendants by email that Simmons would not be participating in a hearing before the Board so as "to preserve all rights to arbitration" through the CBA's grievance procedure.

¶ 8　　　　On February 20, 2018, the Union filed a two-count complaint in the trial court against the City, Dossey, and the Board. In count I, labeled as a "Petition for Declaratory Ruling," the Union alleged that under the parties' CBA, the Board "makes the decision to discipline, which is then subject to grievance arbitration." It maintained, however, that a controversy developed between the parties "about the proper mechanism to follow *** to make sure [Simmons's] contractual rights to grievance arbitration [were] not waived." The Union asked that the court stay further action by the Board "pending a declaration of whether the [CBA could] be applied as written without waiving [Simmons's] rights to have the disciplinary question resolved at grievance arbitration ***." In count II of its complaint, the Union sought to compel grievance arbitration.

¶ 9　　　　On February 21, 2018, the day after the Union filed its complaint in the trial court, the Board conducted a hearing on Dossey's complaints. At the hearing, Dossey presented witness testimony and evidence in support of his claims that Simmons had engaged in misconduct. Simmons elected not to participate in the hearing, neither appearing for the hearing nor presenting

any evidence. In March 2018, the Board issued its findings and decision. It determined Simmons had violated policies, rules, and regulations of the Pekin Police Department and ordered him terminated from his employment. Shortly following the Board's decision, Simmons filed another grievance, asserting the City lacked "just cause" for his discharge and that its discharge decision was subject to arbitration under "the traditional just cause standard."

¶ 10         In November 2019, the Union moved in the trial court for partial summary judgment on count II of its complaint, seeking to compel arbitration. It alleged the undisputed facts in the case showed that a controversy existed between the parties; the parties generally agreed to arbitrate their disputes; and the parties specifically agreed that if the Board disciplined a police officer, the officer could elect to appeal the Board's decision through arbitration. The Union argued that such facts, coupled with defendants' refusal to arbitrate, warranted the court entering an order to compel arbitration under the Uniform Arbitration Act (Arbitration Act) (710 ILCS 5/2 (West 2018)).

¶ 11         In June 2020, defendants responded to the Union's motion and filed a cross-motion for summary judgment. They agreed there was "no dispute that the [CBA] allows the [Union] to *appeal* a decision of the [Board] to arbitration." (Emphasis in original.) However, they asserted the Union was not entitled to compel arbitration in the present case because participation in proceedings before the Board was a condition precedent to arbitration and neither Simmons nor the Union appeared or presented argument at the February 2018 Board hearing. Defendants maintained that because the Union did not participate in the Board's hearing, it acted inconsistently with the arbitration clause in Article 13, section 13.7 of the CBA and, thus, waived arbitration. They further argued that the Union was seeking "an inappropriate *de novo* hearing before an arbitrator." Defendants contended that allowance of "*de novo* arbitration after the [Board] hearing"

would violate the public policy against "successive [evidentiary] hearings."

¶ 12 In July 2020, the trial court entered a written order allowing the Union's motion for partial summary judgment and denying defendants' cross-motion. The court found "it ha[d] not been established that [Simmons] has waived his contractual right to arbitration." It held that issues regarding the scope and nature of any arbitration proceeding and whether contract preconditions had been satisfied must be initially addressed by the arbitrator, and it stated: "Any decision on these issues by the arbitrator is reviewable by this Court."

¶ 13 In November 2020, a hearing was conducted in the matter before arbitrator Stephen L. Hayford. At arbitration, the City acknowledged that consistent with Article 13, section 13.7 of the CBA, it was "appropriate to treat [Simmons's] March 15, 2018[,] Grievance as an appeal of the [Board's] Findings and Decision." However, the parties disagreed regarding the nature and scope of any arbitration hearing. They stipulated that the issue for consideration was whether the arbitrator should "conduct a *de novo* hearing regarding the termination of *** Simmons."

¶ 14 In February 2021, the arbitrator issued his decision, answering the parties' stipulated question in the affirmative. The arbitrator specifically concluded as follows:

> "The City has failed to prove by a preponderance of the evidence that in negotiating Article 13, Sections 13.6 and 13.7 of the [CBA] the Parties mutually intended that a police officer's appeal to arbitration from an Order by the [Board] that he be terminated is not subject [to] a *de novo* proceeding in arbitration."

The arbitrator also entered the following "Award":

> "When this Matter proceeds to a hearing on the merits of [Simmons's] appeal of the March 13, 2018, [Board] Decision and Order that resulted in his termination, the Arbitrator will conduct a *de novo* hearing regarding [Simmons's]

termination. In that arbitration proceeding[,] all relevant questions of fact and the interpretation and application of the pertinent provisions of the [CBA] and applicable law and regulation will be before the Arbitrator for consideration."

¶ 15       In May 2021, defendants filed an application with the trial court to vacate the arbitrator's award pursuant to section 12 of the Arbitration Act (710 ILCS 5/12 (West 2020)). They argued that the arbitrator's interpretation of the CBA violated "a well-defined and dominant public policy *** against duplicative litigation or duplicative hearings." Defendants asked the court to remand the matter for an arbitration hearing before a new arbitrator, "to be conducted in a manner that is consistent with both the [CBA] and public policy" in that the arbitrator's review of the Board's decision to terminate Simmons must "be limited to a review of the [Board's] administrative record."

¶ 16       Defendants also filed a motion for summary judgment on their application to vacate the arbitration award and submitted a memorandum in support of their motion. They argued that because Arbitrator Hayford's interpretation of the CBA permitted two full evidentiary hearings for a police officer contesting disciplinary action—one before the Board and a second before an arbitrator—it violated Illinois policy, as set forth in judicial decisions, against duplicative, repetitive, and wasteful litigation. Defendants complained that under the arbitrator's award, there could be two rounds of subpoenaing witnesses and documents, and the City would be forced "to put on its case twice." Defendants further contended it was possible to interpret the CBA in a manner that did not offend public policy by construing Article 13, section 13.7, which provides for an "appeal" of a Board decision through arbitration, "to mean what is customarily meant by appeal," *i.e.*, "a limited review to determine whether errors of law or fact were made at the [Board] hearing level."

¶ 17 In July 2021, the Union filed a motion to strike defendants' application to vacate the arbitrator's award, arguing defendants did not follow proper procedures in filing their motions. Defendants responded that their application to vacate was properly brought pursuant to section 12 of the Arbitration Act (*id.*), which they asserted empowers a court to vacate an arbitration award upon a party's application. Defendants maintained their motions were properly filed and argued that the trial court had "retained jurisdiction to address issues raised by the parties" in its July 2020 order, which compelled arbitration. In May 2022, the trial court denied the Unions' motion, finding it had "specifically retained jurisdiction to review any decision on issues made by an arbitrator."

¶ 18 In responding to defendants' motion to vacate the arbitrator's award and their motion for summary judgment, the Union characterized defendants' claim as one "that the public policy underlying the affirmative defense of *res judicata* negates the parties' agreement to arbitrate after a decision by the [Board]." They argued that to establish their claim, defendants had to prove the public policy they were relying on predominates. The Union asserted, however, that the doctrine of *res judicata* may be waived and was inferior to the right to contract and to arbitrate. It maintained defendants could not prevail on their claim precisely because the City agreed to arbitrate the Board's disciplinary decisions.

¶ 19 In October 2022, the trial court conducted a hearing in the matter. The same month, it entered a written order, stating as follows: "For the reasons stated in open Court, the Motion for Summary Judgment is denied [and] the parties are directed to proceed to arbitration in accordance with Arbitrator Hayford's Award."

¶ 20 This appeal followed.

¶ 21 II. ANALYSIS

¶ 22 On appeal, defendants argue the trial court erred by enforcing, rather than vacating,

the arbitrator's decision that the parties' CBA provides for "a *de novo* [arbitration] hearing" on the issue of Simmons's termination from his employment. As they did below, defendants contend (1) Illinois has a well-defined and dominant public policy against duplicative, repetitive, and wasteful litigation and (2) the arbitrator's interpretation of the CBA violates that public policy because it permits two evidentiary hearings—one before the Board and one before an arbitrator—on a single issue—whether a police officer should be disciplined.

¶ 23      However, we do not reach the merits of defendants' appeal as this case presents issues regarding the propriety of both the trial court's judicial review of the arbitrator's "Award" and this court's appellate jurisdiction. Although the parties have raised no jurisdictional dispute on appeal, we have an independent duty to consider jurisdictional issues and dismiss an appeal if jurisdiction is wanting. *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 251-52, 930 N.E.2d 895, 915 (2010).

¶ 24                    A. Judicial Review of the Arbitration Award

¶ 25      The authority for judicial review of an arbitration award is set forth in the Arbitration Act. *Klehr v. Illinois Farmers Insurance Co.*, 2013 IL App (1st) 121843, ¶ 8, 984 N.E.2d 524 (citing 710 ILCS 5/10 to 13 (West 2010)). "[A]side from confirming, modifying, or vacating a final arbitration award, the role of the courts in the arbitration process is generally limited to determining the existence of a valid arbitration agreement." *Id.* Section 12 of the Arbitration Act provides the trial court with authority to vacate an arbitration award. 710 ILCS 5/12 (West 2020). When an arbitration award is entered as a result of an arbitration agreement that is part of a CBA, the grounds for vacating the award are the same as those available at common law. *Id.* § 12(e). In particular, our supreme court recognizes "a public-policy exception to vacate arbitration awards that are based on collective bargaining agreements." *City of Chicago v.*

*Fraternal Order of Police, Chicago Lodge No. 7*, 2020 IL 124831, ¶ 25, 181 N.E.3d 18. "The public-policy exception is a narrow one—one that is to be invoked only when a party clearly shows enforcement of the contract, as interpreted by the arbitrator, contravenes some explicit public policy." *Id.*

¶ 26　　　　　Significantly, however, "the [Arbitration] Act does not provide a mechanism for review of interlocutory orders by the arbitrators." *Klehr*, 2013 IL App (1st) 121843, ¶ 8. In *Klehr*, the plaintiff, a party to an arbitration agreement, filed a declaratory judgment action, seeking to challenge an arbitration panel's discovery orders. *Id.* ¶ 5. The First District found that the parties' dispute over the discovery orders was "unripe for adjudication" and that it would "remain unripe until the arbitrators issue their final award." *Id.* ¶ 21. In so holding, the court determined the parties' dispute was the type "intended to be reviewed by the courts only at the conclusion of arbitration as part of a motion to vacate the award." *Id.* ¶ 20. It further stated as follows:

> "[A]llowing [the] plaintiff to obtain interlocutory review of the arbitrators' ruling would undermine the entire point of arbitration. Illinois public policy favors arbitration as a dispute-resolution mechanism because it 'promotes the economical and efficient resolution of disputes.' [Citation.] If a declaratory judgment could be used to circumvent the limited role of the courts in arbitration, then any party aggrieved by an interlocutory order of the arbitrators could obtain judicial review prior to completion of the arbitration process, which would reduce the efficiency and cost effectiveness of arbitration as a dispute-resolution mechanism." *Id.*

¶ 27　　　　　The rationale applied in *Klehr* also applies here. In this case, the arbitration "Award" that defendants asked the trial court to vacate, and from which this appeal stems, was a nonfinal decision of the arbitrator. A final order or judgment is one "which ascertains and fixes

absolutely and finally the rights of the parties to the litigation." *Department of Central Management Services v. American Federation of State, County & Municipal Employees*, 182 Ill. 2d 234, 238, 695 N.E.2d 444, 446 (1998). Here, in his February 2021 decision, the arbitrator decided only the issue of the scope of arbitration under the parties' CBA, and further arbitration proceedings were necessary to fully resolve the parties' dispute. Like in *Klehr*, we find the issue presented to the trial court by defendants was not ripe for judicial review.

¶ 28                                B. Appellate Jurisdiction

¶ 29        Moreover, even assuming judicial review of the arbitrator's decision was appropriate in this case, the record reflects appellate jurisdiction is lacking.

¶ 30        "The law is well established that unless specifically authorized by the rules of [the supreme court], the appellate court has no jurisdiction to review judgments, orders[,] or decrees which are not final." *Department of Central Management Services*, 182 Ill. 2d at 238. In this case, defendants appealed the trial court's October 2022 order pursuant to Illinois Supreme Court Rule 303 (eff. July 1, 2017) or, in the alternative, Illinois Supreme Court Rule 307(a) (eff. Nov. 1, 2017).

¶ 31        Rule 303 provides for appeals from final judgments of the trial court in civil cases. Ill. S. Ct. R. 303 (eff. July 1, 2017). That rule does not apply in this case because the order appealed from was not a final judgment. The court's ruling did not ascertain and fix "absolutely and finally the rights of the parties." *Department of Central Management Services*, 182 Ill. 2d at 238-39 (finding the trial court's denial of an application to vacate an arbitrator's award was not final until the court entered an order confirming the arbitrator's award under the procedures set forth in the Arbitration Act). In fact, the court's decision in this case required further proceedings before the arbitrator on the merits of the parties' underlying dispute. As a result, defendants' appeal may not be taken pursuant to Rule 303.

¶ 32 Rather than being final, the trial court's October 2022 order was interlocutory in nature. "Supreme Court Rule 307 regulates appeals from interlocutory orders of the circuit court" and "confers on parties the right to appeal certain interlocutory orders before entry of final judgment by the circuit court." *Salsitz v. Kreiss*, 198 Ill. 2d 1, 11, 761 N.E.2d 724, 730 (2001). Pursuant to Rule 307(a)(1), an appeal may be taken from an interlocutory order of a trial court that grants, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction. Ill. S. Ct. R. 307(a)(1) (eff. Nov. 1, 2017). "An order of the circuit court to compel or stay arbitration is injunctive in nature and subject to interlocutory appeal under [Rule 307(a)(1)]." *Salsitz*, 198 Ill. 2d at 11.

¶ 33 Here, the trial court's October 2022 order effectively denied defendants' application to vacate the arbitrator's decision regarding the scope of arbitration and remanded the matter to the arbitrator for further proceedings consistent with the arbitrator's ruling. The court's order clearly did not stay the arbitration proceedings, nor may it be characterized as one compelling arbitration. Notably, a court may enter an order compelling arbitration "[o]n application of a party showing an agreement [to arbitrate], and the opposing party's refusal to arbitrate." 710 ILCS 5/2(a) (West 2020). At the point in the underlying proceedings when the court issued its October 2022 order, it was addressing an application to vacate an arbitration award, not to compel arbitration. Additionally, neither party was refusing to arbitrate. Rather, both the Union and defendants agreed that arbitration in some form was appropriate under Article 13, section 13.7 of the CBA. They disputed only the nature and scope of the arbitration described in their contract. Accordingly, Rule 307 is inapplicable to the present case.

¶ 34 Because the trial court's October 2022 order is neither a final order, nor an appealable interlocutory order under Rule 307, we lack appellate jurisdiction. Defendants' appeal

must be dismissed as a result.

¶ 35                                  III. CONCLUSION

¶ 36            For the reasons stated, we dismiss defendants' appeal.

¶ 37            Appeal dismissed.