# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Duemer v. Edward T. Joyce & Associates, P.C.*, 2013 IL App (1st) 120687

---

| | |
|---|---|
| Appellate Court Caption | WALTER DUEMER *et al.*, Plaintiffs-Appellees, v. EDWARD T. JOYCE AND ASSOCIATES, P.C., Defendant-Appellant. |
| District & No. | First District, Sixth Division<br>Docket No. 1-12-0687 |
| Filed | August 9, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from defendant's representation of plaintiffs in the investigation and prosecution of their claims against various entities in connection with their purchase of certain stock, the trial court's confirmation of the arbitration award and denial of defendant's motion to vacate or modify the award was upheld over defendant's contentions that the arbitrator exceeded his authority and refused to consider evidence relevant to the issue of damages and that the award of damages and costs should be modified, since the claim that the arbitrator exceeded his powers was waived by defendant's failure to raise the issue during arbitration, the arbitrator did not refuse to hear material evidence, and the issue of modification of the award of damages and costs was forfeited by defendant's failure to cite authorities supporting its argument. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CH-34874; the Hon. Mary Lane Mikva, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Michael H. Moirano and Claire Gorman Kenny, both of Nisen & Elliott, LLC, of Chicago, for appellant.

Matthew T. Furton, of Locke Lord LLP, of Chicago, and Tracy Jackson Cowart and Robert Bruce Wallace, both of Eggleston & Brisco, LLP, of Houston, Texas, for appellees.

Panel

JUSTICE HALL delivered the judgment of the court, with opinion.
Justices Gordon and Reyes concurred in the judgment and opinion.

**OPINION**

¶ 1      Following a hearing, the arbitrator entered a final award of $628,527.47 in favor of Walter Duemer and other named plaintiffs[1] and against the defendant, Edward T. Joyce and Associates, P.C. The circuit court of Cook County granted the plaintiffs' petition to confirm the award and denied the defendant's request to vacate or modify the award. The defendant appeals.

¶ 2      On appeal, the defendant contends that the arbitration award must be vacated because the arbitrator exceeded his authority, and he refused to consider relevant evidence on the damages issue. The defendant further contends that the award of damages must be modified. For the reasons set forth below, we affirm the judgment of the circuit court.

¶ 3                                   BACKGROUND
¶ 4                                I. Securities Case
¶ 5      On April 19, 2002, the plaintiffs, members of the FFR group,[2] and the defendant entered into a retainer agreement (the 2002 retainer agreement) whereby the defendant agreed to "provide professional legal services to the [plaintiffs] to investigate and prosecute any and all claims which the [plaintiffs] may have against Deloitte & Touche, Jeffries Company, EPS Solutions Corporation and Enterprise Profit Solutions Corporation (collectively 'EPS') and others in connection with the [plaintiffs'] purchase of EPS stock." The 2002 retainer agreement provided that "[t]he [defendant] *** shall diligently investigate and prosecute the Claims. The [defendant's] obligation under this Agreement terminates upon the final settlement of the Claims or the entry of a final judgment of award by a court or other duly constituted authority (including an arbitrator), whichever shall first occur."

---

[1]The names of the all the plaintiffs are contained in Exhibit A attached to this opinion.

[2]The FFR group consisted of some of the individuals and entities who purchased EPS stock.

¶ 6     In consideration for the 2002 retainer agreement, the defendant was to receive "a contingent fee equal to twenty-five (25) percent of any and all money or other benefits recovered on the Claims." The 2002 retainer agreement set forth a formula to determine the defendant's and the plaintiffs' shares of any recovery. The plaintiffs were responsible for specified costs and expenses incurred by the defendant, including the need to hire outside counsel for ministerial assistance or to act as local counsel. But the defendant "may, at its expense, associate with any other lawyers for the prosecution of the Claims." If the costs exceeded $150,000, the plaintiffs were entitled to a credit against the contingency fee for the amount of costs in excess of $150,000.

¶ 7     The 2002 retainer agreement also contained an arbitration clause. The clause provided in pertinent part as follows:

> "All claims relating in any way to the interpretation or application of this Agreement or arising out of this Agreement shall be resolved by arbitration. *** The arbitrators will add their costs to their ruling and the party who does not prevail will pay all costs of arbitration."

Finally, the 2002 retainer agreement required the plaintiffs' approval of any settlement or compromise of their claims.

¶ 8     The defendant pursued and resolved successfully the plaintiffs' claims with the exception of the claim against Deloitte & Touche. The only unresolved claim under the 2002 retainer agreement was against EPS, which had been held in abeyance because EPS was insolvent. The defendant retained the law firm of Morgan Lewis as its insurance coverage consultant. Following arbitration proceedings, the arbitrators entered an award for the plaintiffs and against EPS. EPS's insurers refused to pay the award.

¶ 9                                    II. Insurance Coverage Case

¶ 10    In September 2007, Morgan Lewis filed suit on behalf of the plaintiffs against the insurers. The defendant informed the plaintiffs that its representation of them pursuant to the 2002 retainer agreement had ended and that it did not handle insurance coverage work. However, Morgan Lewis had requested that the defendant provide limited assistance with the suit against the insurers. The defendant proposed to the plaintiffs that for its participation, it would be entitled to an hourly fee, which would be deferred until a recovery was obtained; if there was no recovery, the defendant would waive its hourly fee. Plaintiff Duemer questioned the applicability of the 2002 retainer agreement to the insurance coverage case and discussed the matter with the defendant several times during 2008. Subsequently, a settlement between the plaintiffs and EPS's insurers was reached.

¶ 11    In a letter dated May 25, 2010, attorney Tracy Cowart of the law firm of Eggleston and Briscoe advised the defendant that the firm had been retained by the plaintiffs to pursue their claims against the defendant in connection with the insurance settlement proceeds. Attorney Cowart asserted that the defendant failed to follow the formula for calculating the fees contained in the 2002 retainer agreement and charged the plaintiffs hourly fees, local counsel fees and unlimited expenses. Despite its assertion that the 2002 retainer agreement did not apply to the insurance coverage case, the defendant also charged the plaintiffs a 25%

contingent fee of the insurance settlement proceeds under that agreement. Attorney Cowart maintained that the defendant had wrongfully converted client trust funds, made misrepresentations and breached its fiduciary duty to the plaintiffs. In response to attorney Cowart's May 25, 2010 letter, the defendant filed a demand for arbitration with JAMS arbitration services.

¶ 12                               III. Arbitration Proceedings

¶ 13      In their request for relief, the plaintiffs claimed that the defendant collected legal fees under the 2002 retainer agreement to which it was not entitled. They alleged causes of action for breach of fiduciary duty, conversion and breach of contract and requested attorney fees and costs incurred in pursuing their claims against the defendant. In its answer to the request for relief, the defendant denied the claims and alleged the affirmative defenses of performance of an oral retainer agreement, waiver and equitable estoppel. The defendant also filed a counterclaim asserting a claim for *quantum meruit*. Retired Justice Robert E. Rose (arbitrator Rose) was chosen to arbitrate the dispute. Over a three-day period in May 2011, arbitrator Rose conducted an evidentiary hearing. The evidence included testimony by eight witnesses and exhibits submitted by the parties. At the close of the evidentiary hearing, the parties submitted written closing arguments.

¶ 14                               A. The Interim Award

¶ 15      On July 8, 2011, arbitrator Rose issued his interim award. Based on the evidence from the hearing, he made findings of fact and conclusions of law as set forth below.

¶ 16      Arbitrator Rose found that the pursuit of a bad-faith insurance coverage claim was not contemplated by the parties under the 2002 retainer agreement. In an August 3, 2007 memorandum, the defendant advised the plaintiffs that once the final order was issued in the EPS arbitration case, " 'we have to begin collection efforts against EPS's insurers. Toward that end, we have already retained insurance coverage experts on our clients' behalf to lead us through the process of fighting every coverage challenge the insurers may assert.' " In a conference call on August 9, 2007, the defendant explained that coverage counsel had been retained for the plaintiffs to assist in recovering from EPS's insurers. Several of the plaintiffs did not recall that the defendant explained that it would be assisting coverage counsel and the terms of its assistance. The parties stipulated that some but not all the plaintiffs participated in the conference call. On September 25, 2007, the law firm of Morgan Lewis filed suit on behalf of the plaintiffs and against EPS's insurers.

¶ 17      Arbitrator Rose found that the plaintiffs were unaware that the defendant had previously retained the Morgan Lewis firm to assist it in the arbitration proceeding against EPS. It was not until the January 30, 2008 memorandum from the defendant that the plaintiffs were informed in writing that (1) the defendant considered it had fulfilled its obligations under the 2002 retainer agreement, (2) Morgan Lewis was the lead counsel in the suit against the EPS insurers and working on an hourly basis, and (3) the defendant was charging the plaintiffs a contingent hourly fee for its work performed in connection with the insurance case.

¶ 18                          1. *Undue Influence*

¶ 19       Based on the evidence, arbitrator Rose determined that the defendant had not overcome the presumption of undue influence that arose when an attorney benefitted from the modification of an existing fee agreement. The August 3, 2007 memorandum did not mention that the defendant considered its obligations under the 2002 retainer agreement to be completed or that it would be charging the plaintiffs an hourly fee in addition to its 25% interest in all funds recovered. The memorandum never made it clear to the plaintiffs that a new fee agreement was being reached and did not advise the plaintiffs that they could seek independent legal advice as to the proposed retainer agreement. A considerable number of the plaintiffs did not participate in the August 9, 2007 conference call, and the defendant failed to establish by a presumption of the evidence the content of the conference call. While the January 30, 2008 memorandum did advise the plaintiffs that the defendant considered the 2002 retainer agreement terminated, that it would be charging a contingent hourly fee, and that Morgan Lewis would be the lead counsel, it did not state that the plaintiff should get independent counsel or that the defendant would be collecting its contingent fee and hourly billings, if the insurance suit was successful. As a result, the consideration charged for the new agreement was more than it would have been had the plaintiffs obtained independent counsel.

¶ 20       Arbitrator Rose found that the plaintiffs were presented with the terms of the 2007 retainer agreement on a " 'take it or leave it' " basis and that there was no meeting of the minds as to the terms of the new retainer agreement. In addition, the new retainer agreement was not reduced to writing in violation of Rule 1.5(c) of the Illinois Rules of Professional Conduct (Ill. R. Prof. Conduct (2010) R. 1.5(c) (eff. Jan. 1, 2010)). He found that the January 30, 2008 memorandum was untimely and inadequate to serve as a written contingent fee request. Arbitrator Rose concluded that the new retainer agreement must be set aside.

¶ 21                       2. *The Defendant's Counterclaim*

¶ 22       Arbitrator Rose found no evidence to support the defendant's claim that the plaintiffs had breached any of the agreements they entered into with the defendant or that there was a basis for a *quantum meruit* recovery. He also rejected the defendant's waiver and estoppel defenses, based on evidence that plaintiff Duemer and the defendant had agreed to conclude the litigation prior to addressing the costs and attorney fees issue.

¶ 23                                3. *Damages*

¶ 24                            a. Morgan Lewis Fees

¶ 25       While the 2002 retainer agreement no longer applied, and the new retainer agreement was voided by the defendant's actions, arbitrator Rose found that the plaintiffs needed counsel to represent them in the insurance litigation. Since the defendant's actions were not intentional, arbitrator Rose determined that the plaintiffs were responsible for 75% of the Morgan Lewis fees and, as a sanction, the defendant was responsible for the remaining 25% of the Morgan Lewis fees.

## b. Contingent Hourly Fee

Arbitrator Rose noted that pursuant to case law, a retainer agreement resulting from undue influence was voidable, and the return of the fees paid under such an agreement was an appropriate sanction. He determined that such a sanction was appropriate in this case and ordered the defendant to pay $405,674.87 to the plaintiffs.

## B. Post-Interim-Order Proceedings

The defendant filed a motion to adjust and reduce the damages amount. Under the interim award, the plaintiffs received a total of $555,802.02, consisting of a refund equal to 25% of the Morgan Lewis fees they had paid and the refund of the fees paid under the 2007 retainer agreement. The defendant maintained that the amount did not reflect the amount of the fees it actually collected from the plaintiffs. According to the defendant, the amount of contingent hourly fees actually paid to it by the plaintiffs was $210,007.94, not the $405,674.87 set forth in the interim award. The defendant also argued that because of a credit given to the plaintiffs, the defendant actually received only 15% rather than the 25% called for under the 2002 retainer agreement.

The defendant pointed out that in the interim order arbitrator Rose stated that his intention was to award the plaintiffs only those amounts they actually paid to the defendant and to require the defendant to pay a fair share of the costs of prosecuting the insurance coverage suit. Therefore, the defendant maintained that the award of $555,802.02 should be reduced to $300,084.

The plaintiffs filed a motion requesting the issuance of a final award. In addition, they sought an award of costs and requested that arbitrator Rose make findings of fact and conclusions of law on their conversion claim against the defendant.

## C. Final Award

In the final award, arbitrator Rose denied the conversion claim based on the parties' agreement to resolve the fee calculation disagreement after the distribution of the proceeds was made and the fact that plaintiff Duemer did not state a specific amount to be placed in trust.

Arbitrator Rose also rejected the defendant's motion to reduce the amount of damages. Under the 2002 retainer agreement, as the prevailing party, the plaintiffs were entitled to the costs of arbitration. In addition to the $555,802.02, the plaintiffs were awarded $72,725.45 in costs from the defendant.

## D. Post-Final-Award Proceedings

The defendant filed a motion to correct a computation error in the hourly fee portion of the final award. The defendant argued that arbitrator Rose did not take into consideration a $400,000 credit against the defendant's hourly fees, which the plaintiffs received as part of the settlement with one of ESP's insurers. The defendant requested that the hourly fee amount awarded to the plaintiff be reduced from $405,674.87 to $210,007.94.

¶ 37    Arbitrator Rose denied the motion. He found the motion untimely since it was not filed within seven days as required by JAMS Rule 24(j). He also found that the defendant's request was "not a request for relief from a miscomputation or faulty calculation of damages as contemplated by JAMS Rule 24(j), but rather a re-argument of the Pre-Final Award issues about the amount of contingent hourly fees charged."

¶ 38    The defendant's motion for reconsideration was denied. Arbitrator Rose found that the $400,000 credit was not proven by a preponderance of the evidence. Moreover, under JAMS Rule 22(c), the posthearing affidavit from a member of the defendant's firm should have been submitted as evidence during the hearing. Finally, arbitrator Rose explained that "[t]he decision regarding a set-off was not made under the terms of the 2002 retainer agreement, but was a simple matter of the damages flowing from the [defendant's] conduct, and whether a claimed set-off had been proven."

¶ 39                    IV. Circuit Court Proceedings

¶ 40    The plaintiffs filed a verified petition to confirm the arbitration award. The defendant filed a verified answer and a verified counterclaim to vacate or modify the final award. In the counterclaim, the defendant alleged that arbitrator Rose exceeded his powers, refused to consider relevant evidence and refused to correct miscalculations in the amount of the damages awarded. The defendant sought a correction of the damage amounts.

¶ 41    The circuit court entered an order denying the defendant's counterclaim and confirming the arbitration award. The court assessed additional costs of $19,846.04 and entered judgment for the plaintiffs in the amount of $648,373.51. This appeal followed.

¶ 42                            ANALYSIS
¶ 43              I. Whether the Final Award Must Be Vacated

¶ 44    The defendant contends that the final award must be vacated because arbitrator Rose exceeded his powers and refused to hear evidence on the issue of damages. Pursuant to section 12(a) of the Uniform Arbitration Act (the Act), an arbitration award must be vacated where the arbitrator exceeded his powers or refused to hear evidence material to the controversy. 710 ILCS 5/12(a)(3), (4) (West 2010).

¶ 45              A. Did Arbitrator Rose Exceed His Powers?
¶ 46                    1. Standard of Review

¶ 47    Whether an arbitrator exceeded his powers presents a question of law, which the court reviews *de novo*. *TruServ Corp. v. Ernst & Young LLP*, 376 Ill. App. 3d 218, 222 (2007). The court also reviews *de novo* the question of whether a claim is subject to arbitration. *First Health Group Corp. v. Ruddick*, 393 Ill. App. 3d 40, 48 (2009).

¶ 48                        2. Discussion
¶ 49    The defendant maintains that the plaintiffs' claims in their request for relief pertained

only to violations of the 2002 retainer agreement. Therefore, arbitrator Rose exceeded his authority when he adjudicated a claim under the 2007 retainer agreement that was not covered under the arbitration provision of the 2002 retainer agreement and not asserted by the plaintiffs in accordance with JAMS' rules.

¶ 50    To preserve for review the issue of whether a claim was subject to arbitration, a party must object to the arbitration proceedings in a timely manner. *Ruddick*, 393 Ill. App. 3d at 48. The objection should be made at the earliest opportunity and must occur no later than the filing of the answer. *Ruddick*, 393 Ill. App. 3d at 48. Where a timely objection is made, the issue may be judicially reviewed even if the objecting party participates in the arbitration proceeding. *Ruddick*, 393 Ill. App. 3d at 48-49.

¶ 51    The defendant first objected to the claims decided by arbitrator Rose in the circuit court proceedings. Failure to object during arbitration waives the issue, unless the party can justify the delay, such as an opportunity to discover pertinent facts. *Ruddick*, 393 Ill. App. 3d at 49. The defendant asserts that it could not have objected earlier because those claims were not set forth in the plaintiffs' request for relief, as required by JAMS' rules.

¶ 52    JAMS Rule 9(a) requires that "[e]ach party shall afford all other Parties reasonable and timely notice of its claims, affirmative defenses or counterclaims. *** No claim, remedy, counterclaim or affirmative defense will be considered by the Arbitrator in the absence of such prior notice to the other Parties, unless the Arbitrator determines that no Party has been unfairly prejudiced by such lack of formal notice or all parties agree that such consideration is appropriate notwithstanding the lack of prior notice." JAMS Rule 10 provides that after a claim is filed but prior to the appointment of the arbitrator, "any Party may make a new or different claim against a Party or any third party that is subject to Arbitration in the proceeding."

¶ 53    In their request for relief, the plaintiffs alleged a breach of fiduciary duty, based on the defendant's actions in declaring that the 2002 retainer agreement did not cover the insurance coverage case, but then charging the plaintiffs as though it did; changing the terms of its representation of the plaintiffs without providing the advice required under such circumstances, and wrongfully retaining client funds. The plaintiffs requested that the defendant be ordered to forfeit all fees collected from the plaintiffs. The request for relief complied with JAMS' rules and served to notify the defendant that the plaintiffs' claims were not limited to whether the 2002 retainer agreement encompassed the attorney fees and costs for the insurance coverage litigation.

¶ 54    Moreover, prior to filing its demand for arbitration, the defendant was on notice that the plaintiffs' claims concerned more than the 2002 retainer agreement. In her May 25, 2010 letter to the defendant, attorney Cowart advised the defendant as follows:

> "[The plaintiff's] claims against [the defendant] are not merely a dispute of contract interpretation as to whether the [2002 retainer agreement] applies to the claims against EPS's insurers. Because [the defendant] withheld fees that cannot be justified under either interpretation, [the plaintiffs'] claims are based on the wrongful conversion of client trust funds, misrepresentation and breach of fiduciary duty."

The defendant did not withdraw its demand for arbitration even after the question of

arbitrability was raised. When attorney Cowart received the defendant's demand for arbitration, she advised the defendant's attorney that "because [the defendant] has taken the position that the 2002 Contingent Fee Agreement does not apply to the claims against EPS's insurers, the current dispute, which arises out of those claims, may not be subject to arbitration."

¶ 55    The defendant maintains that it cannot be held to have waived the issue because the 2007 retainer agreement did not contain an arbitration provision. It correctly notes that the parties to an agreement to arbitrate are required to arbitrate only those issues they have agreed to arbitrate as shown by the clear language of the agreement and their intentions as expressed in that language. *Salsitz v. Kreiss*, 198 Ill. 2d 1, 13 (2001). In *Salsitz*, the defendants argued that the plaintiff waived any objection to arbitrability by participating in the arbitration hearings, relying on *Tri-City Jewish Center v. Blass Riddick Chilote*, 159 Ill. App. 3d 436 (1987). The supreme court found *Tri-City Jewish Center* distinguishable. In that case, the plaintiff participated in the arbitration hearing and did not raise the arbitrability issue until after the award was rendered. *Salsitz*, 198 Ill. 2d at 17; *Tri-City Jewish Center*, 159 Ill. App. 3d at 439. In contrast, the plaintiffs in *Salsitz* raised a timely objection to the arbitration proceedings, sought a declaration that the arbitration clause did not apply to the claims in the arbitration proceeding and a stay of the proceedings. Therefore, waiver did not apply. *Salsitz*, 198 Ill. 2d at 17-18.

¶ 56    "A timely objection preserves the right to challenge an award, even where the parties participate in the arbitration proceedings." *Salsitz*, 198 Ill. 2d at 18; see also 710 ILCS 5/12(a)(5) (West 2010) (providing that an award may be vacated where there was no agreement to arbitrate, if "the party did not participate in the arbitration hearing without raising an objection"). The defendant participated in the arbitration hearing without raising an objection to the arbitrability of the plaintiffs' claims. Despite numerous opportunities, the defendant's objection to arbitrability of the issues raised in the plaintiffs' request for relief was raised for the first time in the circuit court.

¶ 57    Based on attorney Cowart's correspondence and the plaintiffs' request for relief, the defendant was on notice that the arbitration issues were not limited to whether the 2002 retainer agreement covered the attorney fees and expenses resulting from the insurance coverage suit. The defendant's failure to object timely to the plaintiffs' claims waived the issue that arbitrator Rose exceeded his authority in rendering the final award.

¶ 58    Even in the absence of waiver, arbitrator Rose did not exceed his authority by deciding a claim not covered by the 2002 retainer agreement. An arbitration agreement " 'must be given as broad an interpretation as its language will allow.' " *Vascular & General Surgical Associates, Ltd. v. Loiterman*, 234 Ill. App. 3d 1, 8 (1992) (quoting *Konicki v. Oak Brook Racquet Club, Inc.*, 110 Ill. App. 3d 217, 224 (1982)). In *Loiterman*, the reviewing court stated as follows:

"An award is sufficiently authorized by an arbitration agreement if authority for the award

'can in some rational manner be derived from the agreement, "viewed in the light of its language, its context, and any other indicia of the parties' intention." ' "

*Loiterman*, 234 Ill. App. 3d at 8 (quoting *Amoco Oil Co. v. Oil, Chemical & Atomic Workers International Union, Local 7-1, Inc.*, 548 F.2d 1288, 1294 (7th Cir. 1977), quoting *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1128 (3d Cir. 1969)).

¶ 59 There is a presumption that the arbitrator did not exceed his authority. *Canteen Corp. v. Former Foods, Inc.*, 238 Ill. App. 3d 167, 179 (1992). " 'An arbitrator exceeds his authority when he decides matters which were not submitted to him.' " *Perkins Restaurants Operating Co. v. Van Den Bergh Foods Co.*, 276 Ill. App. 3d 305, 310 (1995) (quoting *Water Pipe Extension, Bureau of Engineering Laborers' Local Union 1092 v. City of Chicago*, 238 Ill. App. 3d 43, 47 (1992)). Where the award is within the submission by the parties, rendered after a full and fair hearing, and contains the honest decision of the arbitrator, we will not set it aside for errors of fact or law or because we would have reached a different result. *Perkins Restaurants Operating Co.*, 276 Ill. App. 3d at 310.

¶ 60 The 2002 retainer agreement provided that "[a]ll claims relating in any way to the interpretation or application of this Agreement or arising out of this Agreement shall be resolved by arbitration." The plaintiffs' breach of fiduciary duty claim arose out of the defendant's assertion that the 2002 retainer agreement did not apply to the insurance coverage litigation and its insistence that the plaintiffs owed fees and costs pursuant to the 2007 retainer agreement. In light of the broad language of the arbitration clause in the 2002 retainer agreement, the plaintiffs' breach of fiduciary duty claim was subject to arbitration. See *Loiterman*, 234 Ill. App. 3d at 8-9 (where the parties agreed to submit to arbitration any controversy or claim arising out of or relating to an employment or its breach and in the absence of express limitations, the arbitrator had authority to determine the enforceability of a noncompetition covenant and to enforce it by injunctive relief).

¶ 61 "Where a controversy is submitted to arbitration, the arbitrator may make an award that will fully settle the controversy." *Loiterman*, 234 Ill. App. 3d at 8. Arbitrator Rose's determination that the 2002 retainer agreement did not contemplate the defendant's representation of the plaintiffs in the insurance coverage suit left unresolved the plaintiffs' claims that the defendant wrongfully withheld the settlement proceeds and that it was not entitled to fees under both the 2002 and 2007 retainer agreements. Arbitrator Rose's further determination that the 2007 retainer agreement was void and his allocation of the responsibility for the payment of attorney fees and costs between the parties resolved the controversy between the parties.

¶ 62 We conclude that the defendant waived the issue of whether arbitrator Rose exceeded his powers. Waiver aside, the plaintiffs' breach of fiduciary duty claim arose out of the 2002 retainer agreement and was related to the determination of whether the agreement applied to the insurance coverage case. Therefore, arbitrator Rose did not exceed his authority.

¶ 63 B. Refusal to Hear Evidence

¶ 64 The defendant contends that the final award must be vacated because arbitrator Rose refused to hear material evidence on the issue of damages. 710 ILCS 5/12(a)(4) (West 2010). The defendant maintains that arbitrator Rose awarded damages based on an equitable remedy theory that neither party raised or argued to the court. The defendant claims it was entitled

-10-

to an evidentiary hearing on the damages issue in order to introduce evidence of the actual amount of fees it was paid and/or its percentage share of the insurance coverage litigation. However, an examination of the record reveals that arbitrator Rose did not refuse to hear evidence as to the amount of fees the defendant had actually received.

¶ 65 In its post-interim-award motion to adjust and reduce the damages awarded, the defendant relied on arbitrator Rose's expressed intention to award the plaintiffs only that amount paid to the defendant as contingent hourly fees. The defendant asserted that it received only $210,007.94 in contingent hourly fees from the plaintiffs and only 15% of the insurance settlement proceeds rather than the 25% to which it was entitled. The motion was supported by the affidavit of attorney Arthur Aufmann, the attorney responsible for representing the plaintiffs in the securities fraud case and insurance coverage litigation. In the affidavit, attorney Aufmann explained how the defendant's share of the various settlements with EPS's insurers was calculated. The calculation included a credit to the plaintiffs of $400,000, in exchange for the plaintiffs' acceptance of a lesser settlement amount. As a result, the defendant received only $210,007.94 in contingent hourly fees from the plaintiffs. In addition, attorney Aufmann explained that the $400,000 credit also resulted in decreasing the defendant's percentage interest in the recovery in the insurance coverage litigation from 25% to 15%. In denying the motion, arbitrator Rose pointed out that the defendant's contention was premised on the 2002 retainer agreement after successfully arguing that the 2002 retainer agreement did not apply to the insurance litigation.

¶ 66 Following the issuance of the final award, the defendant filed a motion to correct the computation in the award of damages to reflect the actual amount in contingent hourly fees it received. In denying the defendant's motion, arbitrator Rose stated as follows:

"The term 'actually paid and received by the [defendant]' was used in the Interim Award.

Perhaps this clause was misleading because [in] this case it was not a 'bill and pay' situation but rather the disbursal of fees by the [defendant] of the settlement proceeds and the calculation of the net amount owed to the [plaintiffs]. This terminology was used to emphasize that the Arbitrator wanted to determine the total amount of contingent hours billed and that the benefit received by the [defendant] either in payments or in the calculation of the net amount to be paid the [plaintiffs]."

Arbitrator Rose pointed out he had rejected the defendant's calculation of the damages, finding that, based on the exhibits and attorney Aufmann's testimony at the hearing:

" '[t]he total charges to the FFR group made by the [defendant] was $466,975.40. These fees were assessed against the two FFR Subgroups and deducted from the proceeds they were to receive. There is no question that these fees were paid by virtue of reductions to the settlement proceeds FFR was to receive, and the [defendant] received the benefit of these deductions.' "

Based on the plaintiffs' percentage of the FFC subgroup, arbitrator Rose found the defendant charged the plaintiffs $405,674.87 in contingent hourly fees. In addition, arbitrator Rose found that motion was untimely under JAMS Rule 24(j) (requiring the motion to correct be served on the other party and JAMS within seven calendar days after the service of the final award by JAMS).

¶ 67    In denying the defendant's motion for reconsideration, arbitrator Rose explained that in calculating the final award, he did not include the $400,000 credit because the defendant failed to prove by a preponderance of the evidence that it had credited the plaintiffs with that amount. While attorney Aufmann averred in his affidavit that the credit was given, he failed to establish his authority to make such an agreement on behalf of the plaintiffs, which amounted to a setoff in the defendant's favor in the calculation of the contingent hourly fees. Even if the Aufmann affidavit established that the credit was given, arbitrator Rose found that the credit was substantive evidence and should have been presented at the hearing since the issues of damages and setoffs were included in the arbitration hearing. Moreover, "[t]he decision concerning a set-off was not made under the terms of the 2002 [retainer] Agreement, but was a simple matter of the damages flowing from the [defendant's] conduct and whether a claimed set-off had been proven."

¶ 68    Where the record fails to show that the arbitrator excluded any material evidence offered by the parties, there is no merit to the argument. *Rauh v. Rockford Products Corp.*, 143 Ill. 2d 377, 390 (1991). Our detailed review of the record reveals that arbitrator Rose did not refuse to hear evidence pertinent to the issue of damages that the defendant wished to present. The defendant's motions presented its calculations of the damages and its arguments for reducing the amount of damages. Arbitrator Rose did not refuse to hear the evidence, but considered it and provided detailed reasons for rejecting the evidence.

¶ 69    We conclude that arbitrator Rose did not refuse to hear material evidence relating to the defendant's damages and therefore did not violate section 12(a)(4) of the Act.

¶ 70                    II. Modification of Damages Award and Costs Award

¶ 71    The defendant contends if this court determines that arbitrator Rose properly exercised his authority, the damages in the final award must be modified to reflect the actual amount of fees the contingent hourly fees and the actual percentage of the insurance settlement the defendant received. The defendant's failure to support its argument with citations to authority violates Illinois Supreme Court Rule 341(h)(7) (eff. July 1, 2008). Accordingly, the argument is forfeited.

¶ 72    The defendant contends arbitrator Rose erred in awarding the plaintiffs $72,725.45 in arbitration costs. The 2002 retainer agreement provided, "[t]he arbitrators will add their costs to their ruling and the party who does not prevail will pay all costs of arbitration." The defendant maintains that because arbitrator Rose denied the plaintiffs' breach of contract and conversion claims, the plaintiffs were not the "prevailing party" entitled to costs under the arbitration provision of the 2002 retainer agreement.

¶ 73    "A party can be considered a 'prevailing party' for the purposes of awarding fees when he is successful on any significant issue in the action and achieves some benefit in bringing suit [citation], receives a judgment in his favor [citation] or by obtaining an affirmative recovery. [Citation.]" *Grossinger Motorcorp, Inc. v. American National Bank & Trust Co.*, 240 Ill. App. 3d 737, 753 (1993). This court has observed that "in the context of arbitration, the determination of whether a party can be said to have prevailed may well be solely within the arbitrator's purview without being subject to review by a court." *Spencer v. Ryland*

*Group, Inc.*, 372 Ill. App. 3d 200, 207-08 (2007). The plaintiffs were successful on their breach of fiduciary duty count and achieved an affirmative recovery, whereas the defendant's counterclaim was denied, and it achieved no affirmative relief. Therefore, the plaintiffs were the prevailing party in this case.

¶ 74 The defendant then maintains that arbitrator Rose erred by awarding costs not contemplated in the arbitration provision of the 2002 retainer agreement. Arbitrator Rose's award of costs was based on an affidavit from Michelle Brandon, averring that the amount of the plaintiffs' costs and expenses incurred in connection with the arbitration proceedings was $71,225.45.[3] That amount included the expenses incurred by the three plaintiffs who attended the arbitration hearing, including their travel expenses, the travel expenses of the plaintiffs' attorney before the hearing and in connection with the hearing, and expenses relating to the arbitration, including expert witness fees and all clerical costs and expenses. Arbitrator Rose found the $71,225.45 amount to be reasonable and necessary for the prosecution of the arbitration in this case. Since the parties had each prepaid its half of the $3,000 cost for the proceedings following the interim fee award, arbitrator Rose added $1,500 for a total award of $72,725.45 in costs.

¶ 75 An agreement to arbitrate is a matter of contract. *Salsitz*, 198 Ill. 2d at 13. In construing the provisions of a contract, the cardinal rule is to give effect to the parties' intention, which we discern from the language of the contract. *Virginia Surety Co. v. Northern Insurance Co. of New York*, 224 Ill. 2d 550, 556 (2007). Where the words used are unambiguous, they should be given their plain and ordinary meaning by the court. *Virginia Surety Co.*, 224 Ill. 2d at 556. If the words are susceptible to more than one reasonable interpretation, they will be considered ambiguous. *American Zurich Insurance Co. v. Wilcox & Christopoulos, L.L.C.*, 2013 IL App (1st) 120402, ¶ 29. "A term is not ambiguous 'merely because the parties disagree on its meaning'; rather, '[a]mbiguity exists where language is obscure in meaning through indefiniteness of expression.' " *Wilcox & Christopoulos, L.L.C.*, 2013 IL App (1st) 120402, ¶ 38 (quoting *Hot Light Brands, L.L.C. v. Harris Realty, Inc.*, 392 Ill. App. 3d 493, 500 (2009)).

¶ 76 The defendant asserts that under the 2002 retainer agreement, the "costs of arbitration" were limited to the amounts paid to JAMS for the services of arbitrator Rose. We view the disputed language in the context of the entire provision. See *Wilcox & Christopoulos, L.L.C.*, 2013 IL App (1st) 120402, ¶¶ 38-39 (the parties' intent must be considered in the context of the entire provision). The phrase reads "[t]he arbitrators will add their costs to their ruling and the party who does not prevail will pay *all* costs of arbitration." (Emphasis added.)

¶ 77 The above provision is not ambiguous. As written, the provision draws a distinction between the arbitrators' cost and all costs of the arbitration and does not limit what may be included in the costs of arbitration. Therefore, the defendant's argument that the costs of arbitration are limited to JAMS' cost for the services of the arbitrator is not a reasonable interpretation of the provision as written. Moreover, even if we were to determine that the

---

[3]Ms. Brandon's affidavit could not be located in the record. However, the defendant is not contesting the accuracy of amounts set forth in her affidavit.

language was ambiguous, the ambiguity must be construed against the defendant as the drafter of the 2002 retainer agreement. *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 479 (1998).

¶ 78      We conclude that arbitrator Rose did not err in his award of $72,725.45 in arbitration costs to the plaintiffs.

¶ 79                      CONCLUSION

¶ 80      For all the foregoing reasons, we affirm the order of the circuit court confirming the final award of the arbitrator and denying the defendant's motion to vacate the final award.

¶ 81      Affirmed.

## EXHIBIT A

Tim H. Shoecraft
Wayne L. Weaver
Ronald O. Kindschi
Kindschi Insurance Services, Inc.
Candland, Kindschi Investments, Inc.
FFR Insurance Services, LLC
Strategic Insurance Services, Inc.
Walter C. Duemer
Duemer Trust (Walter C. Duemer & Joan Harriet Duemer, Trustees under Trust agreement dated
    1/10/94)
Pennsylvania Fiduciary and Estate Services, Inc., Custodian for Walter C. Duemer Roth IRA
Pennsylvania Fiduciary and Estate Services, Inc., Custodian for Joan H. Duemer Roth IRA
Joan H. Duemer (Trustee under Trust Agreement dated 1/10/94)
Gene A. Yates, Jr.
Glenn Eisenberg/Mark S. Goodman
Robert S. Gutherman
J. David Craig
Norman H. Bevan
Stephen Burk
S. James Showalter
William H. Van Pelt III
Earl Eastman
Gregory K. Smith
Simon Singer
Michael Breedlove, Sr.
David M. Breedlove, Jr.
Michael Flanagan, Sr.
Lemuel M. Bargeron
Bruce Udell
Steven J. Schwartz/Mel Gross
Emanuel L. Sarris, Sr.
Allan S. Oxman/Randall Riggins
N. Bryson Goss
David D. Henney
Marvin Tarnol
John M. Davis
Kenneth L. Ingram
Michael O'Riordan
Robert C. Shadur/Bernard Weinberg
Howard Feinstein
Josh Gottlieb
Frederick A. Johnson
Harvey Altholz/Wealth Strategy Partners, LLP

Todd Heckman
Manuel Stamatakis
L. Blair Whiting
Robert A. Frisch/Hilary J. Schneider
John Barron
Marvin T. Roth
James P. Menighan
Graydon Garner
William F. Leisman, III
J. Michael Roney
Kenneth N. Scopp
Burton H. Moss
Leslie M. Brower
Richard Bernstein
Michael V. Alen
Jane Kluczkowski
Stephen C. Wolff
James D. Howard
Michael L. Rothstein
Dana E. Bernard
Estate of William A. Senno
Phillip C. Ingram
Sherry Spalding-Fardie
Kevin J. White
Ralph G. Adamo
Michael A. Dickter
Gail Dickter
Thomas Brown
James A. Dyer
Norman A. Pappas
Joseph F. Zullo
Rodney L. Bartels
David M. Isaacson
Les Veltman
Veltman Insurance Agency
Rao Garuda
Dexter McCormick
Joel R. Baker
Joel R. Baker Living Trust
Richard H. Linsday
Thomas D. Riffle
L. Clark Gould/Donald H. Mehlig
S. Edward Feaster
Gerald F. Eastman
Randall C. Long
Jay M. Weinstein

Michael P. Hanley
Winitsky/Singer
Klugman/Cole
Allan S. Oxman
J&B Wilshire Trust dated 10/24/1995
Capital Creation Company
Shadur Family Trust dated 7/30/75
Roger N. Ennis
Senno Financial Group
FFR Advisory, LLC
Michael P. Hanley as Trustee of the Michael P. Hanley 9/19/1991 Revocable Trust
John C. Rosania
Glenn Eisenberg
Robert A. Frisch
Dennis C. Crawford
Robert Shadur Living Trust dated 7/1/97
J. Michael Roney, Trustee for the J. Michael Roney Trust dated 3/16/89
Norman A. Pappas Trustee, Norman A. Pappas Trust Agreement dated 9/4/74 as amended
Randi K. Gottlieb
Steven J. Schwartz
The Rothstein Family Revocable Trust, dated 2/3/89
Daniel J. Hecht
Robert R. Loftus
L. Clark Gould
The Whitelaw Group, Inc.
Hilary J. Schneider
FFR Financial & Insurance Services, LLC
Saul F. Feingold
Eisenberg Financial Group, Inc.
Michael P. Hanley- an Unmarried Man
Robert Loftus Family Trust
Phill C. Ingram as Trustee of Ingram & Assoc. Profit Sharing Plan
Jane Kluczkowski Family Investment Co. Ltd.
Westfield-FFR Partnership
Estate of Richard Cole
Larry J. Pries
Donald H. Mehlig, Trustee of the Mehlig Family Trust, dated May 9, 1973
Tarnol Trust
Lee M. Brower
Lee M. Brower Revocable Trust (dated 9/24/93)
John R. Scott
Gary L. Thornhill/MLT Revocable Trust
Lon Morton
John Willcox
Willcox, Goott & Partners